**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-1730**

In re: SEARCH WARRANT ISSUED JUNE 13, 2019

_____

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

        v.

UNDER SEAL,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Liam O'Grady, District Judge. (1:19-mj-02155-TCB-1)

Argued: September 10, 2019                          Decided: October 31, 2019

Before GREGORY, Chief Judge, and KING and RUSHING, Circuit Judges.

Reversed and remanded by published opinion. Judge King wrote the opinion, in which Chief Judge Gregory and Judge Rushing joined. Judge Rushing wrote a separate concurring opinion.

**ARGUED:** James Patrick Ulwick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellant. Derek Edward Hines, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Steven M. Klepper, Louis P. Malick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellant. Robert K. Hur, United States Attorney, Aaron S.J. Zelinsky, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

KING, Circuit Judge:

The appellant in these proceedings is a Baltimore law firm (the "Law Firm") that challenges the government's use of a so-called "Filter Team" — created *ex parte* by a magistrate judge in the District of Maryland and comprised of federal agents and prosecutors — to inspect privileged attorney-client materials. Those materials were seized from the Law Firm in June 2019 during the execution of a search warrant issued by the magistrate judge. The Law Firm requested that the district court enjoin the Filter Team's review of the seized materials, invoking the attorney-client privilege and the work-product doctrine. When the court denied its request, the Law Firm pursued this appeal. As explained below, we are satisfied that use of the Filter Team is improper for several reasons, including that, inter alia, the Team's creation inappropriately assigned judicial functions to the executive branch, the Team was approved in *ex parte* proceedings prior to the search and seizures, and the use of the Team contravenes foundational principles that protect attorney-client relationships. We therefore reverse and remand.

I.

A.

1.

For about three years, "Lawyer A," a partner of the Law Firm, handled the representation of "Client A" in an investigation conducted by federal authorities in

2

Maryland.[1]  Client A — who is also a Maryland lawyer — was suspected of assisting drug

dealers in illicit activities, including money laundering and obstruction of federal

investigations.  According to the government, its investigation of Client A was obstructed

by Lawyer A, and the relationship between Lawyer A and Client A triggered an application

of the crime-fraud exception to the attorney-client privilege and work-product doctrine.  In

light of Lawyer A's suspected misconduct, the government also initiated an investigation

of Lawyer A.

As part of those investigative efforts, an IRS agent applied for a warrant to conduct

a search of the Law Firm's Baltimore offices.  On June 13, 2019, the magistrate judge

approved the search warrant application and issued the warrant as requested.  Based on her

review of the supporting affidavit of the IRS agent, the judge found probable cause for the

search of the Law Firm and the seizures of client-related materials concerning Lawyer A's

representation of Client A.

2.

Contemporaneously with issuance of the search warrant, the magistrate judge

authorized the Filter Team, which had been proposed to the judge *ex parte* by the

prosecutors in connection with the search warrant application.  In so doing, the judge

adopted the "Filter Team Practices and Procedures" specified in an attachment to the search

---

[1] In seeking to protect the identities of those involved in these proceedings, we use
the nonspecific terms "Law Firm," "Lawyer A," and "Client A."  Our use of those terms is
generally consistent with the record on appeal.

warrant application and affidavit (the "Filter Protocol"). *See* S.J.A. 41-45.[2] The Filter

Protocol defined the membership of the Filter Team and established the process for its

review of the materials to be thereafter seized from the Law Firm. Members of the Filter

Team included lawyers from the United States Attorney's Office in Maryland's Greenbelt

Division (the "Filter Team AUSAs"); a legal assistant and a paralegal who also worked

there; agents of the IRS and DEA; and forensic examiners. The Filter Team operated in

one of the two offices of Maryland's United States Attorney — the Greenbelt office.

Pursuant to the Filter Protocol, the Filter Team members were not involved in the

investigations of Lawyer A and Client A (apart from being Filter Team members). The

agents and prosecutors conducting the investigations of Lawyer A and Client A (the

"Prosecution Team") were excluded from the Filter Team. In contrast to the Filter Team

AUSAs who were assigned to the Greenbelt office, the Prosecution Team lawyers were

assigned to the United States Attorney's Baltimore office.

As for the Filter Team's process of reviewing attorney-client materials seized from

the Law Firm, the Filter Protocol provided for privilege issues to be handled thusly:

- After seizing materials from the Law Firm, the Filter Team would identify and separate privileged and potentially privileged materials from materials that were not privileged. Under the Filter Protocol, privileged materials included "attorney-client information, attorney work product information, and client confidences that have not been waived," *see* S.J.A. 43, 45;

---

[2] Citations herein to "S.J.A. __" refer to the contents of the Sealed Joint Appendix filed by the parties in this appeal. The government later sought to supplement the Sealed Joint Appendix by filing an *ex parte* appendix, the contents of which would be available only to itself and the Court and were never available to the Law Firm. On September 12, 2019, we rejected the filing of the *ex parte* supplemental appendix.

4

- When seized materials were found by the Filter Team to be nonprivileged, the Filter Team AUSAs could forward such materials directly to the Prosecution Team, without the consent of the Law Firm or a court order (the "Privilege Assessment Provision");

- For privileged and potentially privileged materials, the Filter Team would decide whether any such seized materials were "responsive to the search warrant," *id.* at 44;

- For privileged and potentially privileged materials that were "responsive to the search warrant," *id.*, the Filter Team AUSAs would place them in one of three categories:

    1. Seized materials that were privileged and could not be redacted;

    2. Seized materials that were privileged but could be redacted; or

    3. Seized materials that were potentially privileged (for example, when the Filter Team identified some possible exception, such as the crime-fraud exception, to a claim of privilege);

- After providing copies to counsel for Lawyer A of the seized materials identified as within categories 2 and 3, the Filter Team AUSAs would seek an agreement with counsel for Lawyer A concerning whether those materials could be forwarded to the Prosecution Team; and

- If the Filter Team AUSAs and counsel for Lawyer A disagreed on the handling of seized materials, the Filter Team AUSAs would submit such "items to the court for [a] determination regarding privilege and/or proposed redactions of the privileged material," *id.*

The Filter Protocol also authorized the Filter Team to provide the Prosecution Team with seized materials if a Filter Team member "obtain[ed] [a] waiver[] of the attorney-client privilege" by directly contacting the Law Firm client holding the privilege. *See* S.J.A. 42. Under the Protocol, "[i]f a client waive[d] the attorney-client privilege as to

5

files, no further filter review of [those] files . . . for attorney-client privileged material [was] required." *Id.*

3.

Five days after the magistrate judge issued the search warrant, on June 18, 2019, fifteen IRS and DEA agents — who were members of the Filter Team — executed the warrant by conducting a six-hour search of the Law Firm's offices. Those agents seized voluminous materials, including certain "confidential, privileged documents" of the Law Firm concerning, inter alia, Lawyer A's representation of Client A. *See* S.J.A. 66. For example, the agents electronically copied and seized the contents of Lawyer A's iPhone and computer. The electronically seized materials contained all of Lawyer A's email correspondence, including email correspondence related to Client A and numerous other Law Firm clients.[3] More specifically, Lawyer A's seized email inbox contained approximately 37,000 emails, of which 62 were from Client A or contained Client A's surname. And Lawyer A's seized email "sent items" folder contained approximately

---

[3] The inventory for the return of the search warrant that was filed under seal in the district court describes in very general terms the items seized. *See* Fed. R. Crim. P. 41(f)(1)(B) (requiring officer present during execution of warrant to prepare and verify inventory of property seized). For example, the inventory states that agents performed "extraction[s]" of Lawyer A's iPhone, of an iPad belonging to the Law Firm, and of a laptop belonging to a Firm associate. *See* S.J.A. 21. The inventory also describes the seizures of, inter alia, a laptop, a hard drive, a portable drive, and several compact discs. Additionally, the inventory describes the seizures of various physical documents, including "handwritten notes" found at the desk of a Law Firm associate, "client notes" found at the desk of Lawyer A's assistant, and a redweld folder containing "communications handwritten and typed" found in Lawyer A's office. *Id.* at 22-23.

15,000 emails, of which 54 had been sent to Client A or contained Client A's surname. *Id.* at 80.[4] An "extensive" portion of the seized emails were "from other [Law Firm] attorneys concerning . . . other attorneys' clients that have no connection with th[e] investigation[s]" of Lawyer A and Client A. *Id.* at 66. Notably, some of those Law Firm clients "are being investigated by, or are being prosecuted by, the United States Attorney's Office [for the District of Maryland] for unrelated crimes." *Id.*[5]

During the execution of the search warrant by the IRS and DEA on June 18, 2019, various Law Firm partners voiced objections, including to the breadth of the search and seizures. Those objections were made directly to the federal agents conducting the search, and were also made to at least two prosecutors, including a member of the Prosecution Team. A Law Firm partner specifically requested that the government's forensic

---

[4] Our foregoing explanation of the seizures of Lawyer A's emails is derived in part from the affidavit of an information technology professional filed by the Law Firm in the district court. *See* S.J.A. 80-81 (affidavit stating that "I electronically reviewed [Lawyer A's] email folders on the [F]irm's computer server and determined that (a) [Lawyer A's] email inbox contained a total of 37,114 emails with a total size of 9,124,544 KB, of which only 62 emails with a total size of 21,582 KB were from [Client A] or contained [Client A's surname]; and (b) [Lawyer A's] email sent items contained 15,219 emails with a total size of 2,308,938 KB, of which only 54 emails with a total size of 20,049 KB were sent to [Client A] or contained [Client A's surname]"). No evidence contradicting that affidavit was presented to the district court.

[5] In addition to the seizures by federal agents of thousands of emails and other communications between Lawyer A and persons other than Client A, the IRS and DEA agents seized multiple compact discs containing electronic documents that Lawyer A had received from lawyers who had previously represented Client A.

7

examiners limit their seizures of Lawyer A's emails to those that included Client A's name or other relevant search terms. Those requests were all rejected.[6]

By letter delivered to the United States Attorney on June 21, 2019, the Law Firm asserted that the search and seizures contravened the Constitution, Federal Rules of Criminal Procedure, and United States Attorneys' Manual. Additionally, the Law Firm advised the government that the Firm had a duty "to preserve client confidences and secrets," *see* S.J.A. 71, and that it was "ethically mandated to urge the return of all items seized by the government," *id.* at 72. The Law Firm's letter objected to the use of the Filter Team and requested that the government return the seized materials so that the Firm could conduct a privilege review — which would have been the process had the government used subpoenaes *duces tecum* rather than a search warrant. The Law Firm also requested that the government not examine any of the seized materials until the Firm had an opportunity to complete its privilege review. Alternatively, the Law Firm asked the government to immediately submit the seized materials to the magistrate judge or the district court for *in camera* inspection. The government never responded to the Law Firm's letter.

---

[6] The facts specified herein with respect to the Law Firm's objections to the execution of the search warrant, and the government's refusal to limit the seizures of Lawyer A's emails, are spelled out in the affidavit of a Law Firm partner that was filed in the district court. *See* S.J.A. 67 (affidavit stating that "[o]n June 18, 2019, my law partners and I immediately voiced [the Law Firm's] objections to the search and seizure, both to agents conducting the search and by phone to Assistant United States Attorneys . . . . I asked the [g]overnment's forensic examiners to limit the downloading of [Lawyer A's] emails to those that included [Client A's surname] or other relevant search terms, but they refused to do so without explanation"). The government did not rebut the lawyer's affidavit.

B.

On June 26, 2019, Client A — whose own office had also been searched by federal agents and whose files were seized — moved in the district court for relief from the Filter Protocol, which also applied to that search. The following day, the court ordered that the Filter Team not deliver to the Prosecution Team any materials that were seized from Client A and the Law Firm, pending further order of the court.[7]

On June 28, 2019, the Law Firm separately moved in the district court for injunctive relief. More specifically, the Law Firm sought a temporary restraining order and a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the return of seized property, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure (collectively, the "Injunction Requests"). On July 1, 2019, the government responded to and opposed the Law Firm's Injunction Requests. The Law Firm replied the very next day.

Eight days later, on July 10, 2019, the district court conducted a telephonic hearing on the Injunction Requests.[8] During that hearing, the Law Firm's counsel explained that the Law Firm had more than twenty lawyers, and he described the Firm's extensive and ongoing law practice in Maryland, including its involvement in a vast amount of criminal

---

[7] Because all the district judges in the District of Maryland recused themselves from these proceedings, a district judge in the Eastern District of Virginia was designated to handle them. The magistrate judge on this case is also an Eastern District of Virginia judge designated for service in the District of Maryland.

[8] The district court was not available for an earlier hearing due to the extended Fourth of July holiday weekend and the court's schedule.

and civil litigation and related legal services. Counsel emphasized to the court that Lawyer A's entire email file had been copied and seized by the federal agents and that the file contained privileged communications with and between various lawyers and clients of the Law Firm concerning criminal and civil matters unrelated to the investigations of Lawyer A and Client A. Counsel advised the court that the Law Firm had conducted a search of Lawyer A's emails using Client A's surname and identified only 116 responsive emails in the approximately 52,000 emails that were seized from Lawyer A's email file. The Law Firm's counsel emphasized his objections to any use of a government filter team and argued that the Filter Protocol approved by the magistrate judge was fatally flawed. He stressed the Filter Protocol's illegality as to all clients of the Law Firm. Counsel added that the Filter Team would have access to and would be reviewing seized materials related to Law Firm clients that the Filter Team members could be investigating, or might thereby become interested in investigating.

The government responded that the Filter Team AUSAs had asked the Law Firm for a list of clients with pending matters in the United States Attorney's Office, in order to confirm that no Filter Team member was involved in such matters.[9] The Law Firm, however, declined to provide that information. The government represented that it had no alternative but to seize Lawyer A's entire email file because an onsite review was impractical. The government also argued that, if it had provided search terms to the Law

---

[9] In addition to a list of Law Firm clients with pending matters in the United States Attorney's Office, a Filter Team AUSA requested that a Firm partner supply the Filter Team with a list of all Lawyer A's "cases." *See* S.J.A. 74.

10

Firm, those terms would have revealed what the government was searching for, and those revelations might have allowed Lawyer A to obstruct its investigations. In addition, the government claimed that using search terms might cause the Filter Team to overlook emails relevant to the investigations.

At the conclusion of the telephonic hearing of July 10, 2019, the district court orally denied the Law Firm's Injunction Requests, ruling that the Firm had not shown "any likelihood of irreparable harm." *See* S.J.A. 122. The court related that "filter teams can be neutral," and that this Filter Team was "operating under the [c]ourt's direction." *Id.* at 120. The court observed that, "absent a finding that there has been some breach of [the prosecutors'] ethical responsibilities and duties in this case, which rarely occurs," the Filter Protocol was not "inappropriate." *Id.* at 121. Additionally, the court related that "having an independent group" of prosecutors review the seized materials did not "create[] great risk or create[] the appearance of unfairness." *Id.* The court said there was no "per se rule that law firms are to be treated so differently that neutral examiners must be appointed in every case." *Id.* Finally, the court remarked that the Law Firm had "delay[ed] in coming to the [c]ourt," and stated that the Filter Team had made substantial progress in reviewing the seized materials. *Id.* at 122.

On July 11, 2019 — the day after the hearing — the district court entered an order denying the Injunction Requests because the Law Firm had not established that it would suffer irreparable harm absent injunctive relief. *See In re Search of Under Seal*, No. 1:19-mj-02155 (D. Md. July 11, 2019), ECF No. 11 (the "Denial Order"). The Denial Order stated, in part:

11

In reviewing the search warrant, the [m]agistrate [j]udge knew that the search was to be of [a] law firm[] and imposed appropriate and well-established constraints on the [Filter Team] that would be reviewing the seized documents. There is no inherent conflict in having the seized documents reviewed by [the Filter Team] composed of Assistant United States Attorneys who have no connection to the underlying case or [the Law Firm] and no contact with the [Prosecution Team] on this case. . . . As a result, the [c]ourt finds that the limits in the search warrant and the constraints imposed on the [Filter Team] are such that the appointment of a special master or magistrate judge is not necessary to protect [the Law Firm] or its clients from irreparable harm.

*Id.* at 2.

Later that day, the Law Firm noted this appeal, pursuant to 28 U.S.C. § 1292(a)(1). That jurisdictional provision authorizes appellate review of a district court's decision denying injunctive relief.

On July 17, 2019, after the Law Firm's appeal was lodged, the district court entered an agreed order modifying the Privilege Assessment Provision of the Filter Protocol. Specifically, the court altered that Provision to require that the Filter Team's forwarding of seized materials to the Prosecution Team be first approved by the Law Firm or by the court (the "Modified Privilege Assessment Provision"). Prior to that modification, the Privilege Assessment Provision authorized the Filter Team to deem seized materials nonprivileged and give them directly to the Prosecution Team.

C.

On July 12, 2019, the Law Firm moved in this Court for an injunction pending appeal. Five days thereafter, on July 17, 2019, we granted the Law Firm some relief, directing the government to "cease review of the seized files and forthwith place the files

12

in the custody of the [m]agistrate [j]udge to be held under seal pending further order of this Court." *See* ECF No. 39.[10]

After expediting this appeal and receiving the Law Firm's opening brief, we directed the government to specifically address four issues in its brief. Especially pertinent here, we requested that the government address whether judicial functions had been improperly assigned to the Filter Team.

We conducted oral argument in Richmond on September 10, 2019. Two days later, on September 12, 2019, we entered an order that reversed "the district court's denial of the Law Firm's request that review of the seized materials be made by the magistrate judge, rather than by the Filter Team." *See* ECF No. 72 (the "Interim Order"). Our Interim Order reassigned the Filter Team's duties and functions to the magistrate judge and gave guidance in that regard. More specifically, we advised the magistrate judge to review all seized materials, identify those not related to Client A and return them to the Law Firm, and conduct a privilege evaluation of the remaining materials. As promised in the Interim Order, we now issue this opinion to explain our rulings in these proceedings.[11]

---

[10] On July 22, 2019, the government filed with our Court a "Notice of Compliance" with our directive of July 17, 2019, explaining that the Filter Team had provided the magistrate judge with all files — both paper and electronic — seized from the Law Firm. *See* ECF No. 44. By July 22, 2019, the seized materials had been "substantially reviewed and coded by the Filter Team." *Id.* As of that date, the government had not returned any of the seized materials to the Law Firm.

[11] The government represented at oral argument that it had given the magistrate judge all the Filter Team's work product that related to the seized materials. And the lawyer asserted that the government's July 22, 2019 Notice of Compliance so stated. We are not at all certain, however, that the Notice provides such advice. As will be explained, (Continued)

13

II.

The Supreme Court has described the award of a preliminary injunction as "an extraordinary remedy [that is] never awarded as of right." *See Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail on a request for such preliminary relief, the plaintiff must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent the requested preliminary relief, (3) the balance of the equities weighs in its favor, and (4) a preliminary injunction is in the public interest. *See Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc).

When a district court denies a preliminary injunction based on its evaluation of only one of the foregoing factors, we review its assessment of that factor for abuse of discretion. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (explaining abuse of discretion standard); *cf. Henderson ex rel. NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018) (recognizing that court can deny preliminary injunction when party fails to satisfy any one of four factors). In that circumstance, however, we must perform our own assessment of the factors not addressed by the district court. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 & n.21 (10th Cir. 2013) (en banc). We then evaluate the

---

because the Filter Team was performing judicial functions when conducting its review pursuant to the Privilege Assessment Provision and the Modified Privilege Assessment Provision, the government is obliged to fully advise the magistrate judge as to the work that was performed by the Filter Team and to deliver any Filter Team work product to the judge. *See* Interim Order 2 ("All work product of the Filter Team shall forthwith be delivered by the [g]overnment to the magistrate judge for filing under seal.").

14

court's "ultimate decision" to deny injunctive relief for abuse of discretion. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006).

In performing an abuse of discretion review, we assess the district court's factual findings for clear error and its legal conclusions de novo. *See Fusaro*, 930 F.3d at 248. A court abuses its discretion in denying preliminary injunctive relief when it "rest[s] its decision on a clearly erroneous finding of a material fact, or misapprehend[s] the law with respect to underlying issues in litigation." *See Centro Tepeyac*, 722 F.3d at 188 (internal quotation marks omitted). Furthermore, a court "abuses its discretion when it makes an error of law," *see Koon v. United States*, 518 U.S. 81, 100 (1996), or when it ignores "unrebutted, legally significant evidence," *see Alvarez Lagos v. Barr*, 927 F.3d 236, 255 (4th Cir. 2019).

III.

In making our assessment of the various injunction issues, we begin with whether the Law Firm is likely to suffer irreparable harm absent injunctive relief. We proceed in this manner because the district court's denial of the Law Firm's Injunction Requests was predicated solely on the irreparable harm factor of the four-part preliminary injunction test. We then evaluate the other factors, which the district court did not reach and address. More specifically, we consider and decide whether the Law Firm has demonstrated a likelihood of success on the merits of its challenge to the Filter Team and its Protocol, whether the balance of the equities weighs in the Firm's favor, and whether an award of injunctive relief

is in the public interest. *See Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc).[12]

A.

With respect to the irreparable harm factor, the Law Firm is obliged to demonstrate that it is likely to suffer such harm in the absence of injunctive relief. *See Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Law Firm maintains that, absent relief from the Filter Team and its Protocol, federal agents and prosecutors on the Filter Team will continue their review of "tens of thousands" of privileged materials concerning Law Firm clients other than Client A. *See* Br. of Appellant 45. The Law Firm emphasizes (1) that 99.8 percent of the 52,000 emails seized by the government were not from Client A, were not sent to Client A, and did not mention Client A's surname; and (2) that many of those emails contained privileged information relating to other clients of the Firm, including clients who are potential subjects or targets of government investigations.[13]

1.

In ruling that the Law Firm did not satisfy the irreparable harm factor, the district court failed to address the Law Firm's unrebutted evidence with respect to Lawyer A's

---

[12] Although the district court mentioned the balance of the equities factor during the telephonic hearing of July 10, 2019, the court did not rely on that factor to deny the Injunction Requests.

[13] Although the government argues on appeal that the Law Firm's evidence is not accurate and cannot be relied on, it failed to present any contradictory evidence to the district court. *See United States v. Anderson*, 481 F.2d 685, 702 n.19 (4th Cir. 1973) (emphasizing importance of building appellate record in district court).

16

emails. *See Alvarez Lagos v. Barr*, 927 F.3d 236, 255 (4th Cir. 2019) (explaining that failure to address "unrebutted, legally significant evidence" constitutes abuse of discretion). That is, the court ignored evidence that less than one percent of the seized emails were from Client A, were to Client A, or mentioned Client A's surname, and that many seized emails contained privileged communications and attorney work product concerning other Law Firm clients. Additionally, the court failed to acknowledge the fact that some of those communications were from or about clients who "are being investigated by, or are being prosecuted by," federal prosecutors. *See* S.J.A. 66. As a result, the court did not grapple with the harm that is likely to be inflicted on the Law Firm and its clients from the Filter Team's review of many of the seized emails.[14] The court thus abused its discretion in that respect.

2.

---

[14] During the oral argument in this appeal, the government maintained that the Filter Team is entitled to review materials seized from the Law Firm that are not facially relevant to Client A. The government's justification for that proposition is that the Filter Team needs "context" for its privilege determinations. *See* Oral Argument at 43:20, *United States v. Under Seal*, No. 19-1730 (4th Cir. Sept. 10, 2019), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. According to this "context" argument, the government was entitled to seize and review documents for which probable cause was lacking. Unsurprisingly, the government has no supporting authority in that regard. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (en banc) (criticizing government "overreach[]" in seizure of electronic data unsupported by probable cause), *abrogated on other grounds by Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 16-17 (2017).

The district court's failure to consider the Law Firm's unrebutted evidence compounded other errors of law that the court made with respect to the irreparable harm factor. *See Koon v. United States*, 518 U.S. 81, 100 (1996) (explaining that a court "by definition abuses its discretion when it makes an error of law"). More specifically, the court erred by giving short shrift to the important legal principles that protect attorney-client relationships, which we are compelled to elucidate herein.

a.

As we know, the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (explaining that "[t]he privilege protecting confidential communications between an attorney and his client dates back to the Tudor dynasty"). The attorney-client privilege empowers a client — as the privilege holder — "to refuse to disclose and to prevent any other person from disclosing confidential communications between him and his attorney." *See* Black's Law Dictionary 129 (6th ed. 1990). And in proceedings such as these, lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (recognizing that lawyer has duty to invoke claim of privilege on client's behalf); Model Rules of Prof'l Conduct r. 1.6(a), (c) (Am. Bar Ass'n 1983) (explaining that lawyer owes duty of confidentiality to client and must prevent unauthorized disclosure of confidential information). That proposition underlies the Law Firm's uncontested standing to pursue the legal positions it advances in this appeal. *See*

18

*Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney[.]"); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354-55 (4th Cir. 1984) (emphasizing that a lawyer "is entitled to raise [a claim of] privilege on behalf of his . . . client").

The purpose of the attorney-client privilege is to ensure "full and frank communication" between a client and his lawyer and "thereby promote broader public interests in the observance of law and administration of justice." *See Upjohn Co.*, 449 U.S. at 389. As the Supreme Court has consistently emphasized, the attorney-client privilege exists because "sound legal advice or advocacy serves public ends and . . . such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*; *see also Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.").

Although the work-product doctrine does not trace as far into history as the attorney-client privilege, it is no less important. The Supreme Court explicitly recognized and explained the work-product doctrine more than seventy years ago in its seminal decision in *Hickman v. Taylor*. *See* 329 U.S. 495, 510-11 (1947). In *Hickman*, the Court underscored that a lawyer must be able to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. Elaborating on that principle, the Court emphasized that "[p]roper preparation of a client's case demands

19

that [a lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 511. As the Court warned, absent strong protection for work product, "[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial," all to the detriment of clients and "the cause of justice." *Id.*

Thus, the Supreme Court has explicitly approved what it called "a qualified privilege," to be held by lawyer and client alike, "for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *See United States v. Nobles*, 422 U.S. 225, 237-38 (1975) (quoting *Hickman*, 329 U.S. at 508). That privilege is the work-product doctrine, which has now been incorporated into the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 26(b)(3), and the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 16(a)(2), (b)(2).

There are two types of attorney work product that are within the ambit of the doctrine: (1) fact work product, which is "a transaction of the factual events involved," and (2) opinion work product, which "represents the actual thoughts and impressions of the attorney." *See In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks omitted). Opinion work product, we have recognized, "enjoys a nearly absolute immunity" and can be discovered by adverse parties "only in very rare and extraordinary circumstances." *Id.* (internal quotation marks omitted). Fact work product is somewhat less protected, and discovery thereof by others may only be had in limited circumstances, where a party shows "both a substantial need and an inability to secure the

20

substantial equivalent of the materials by alternate means without undue hardship." *Id.* (internal quotation marks omitted).

Notably, the attorney-client privilege and the work-product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (analyzing Sixth Amendment right to effective assistance of counsel). For example, in assessing the interplay between the attorney-client privilege and the Sixth Amendment, we have emphasized that "[t]he essence of the Sixth Amendment right to effective assistance of counsel is, indeed, privacy of communication with counsel." *See United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981); *cf. DeMassa v. Nunez*, 770 F.2d 1505, 1507 (9th Cir. 1985) (describing Sixth Amendment as a "source" for the expectation of privacy in attorney-client communications); 1 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 10.14, 10-91 (4th ed. Supp. 2019) (explaining that "[t]he attorney-client privilege has ties to the Sixth Amendment"). Absent privacy of communications and the "full and frank" discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare and present his client's defense. *See Upjohn Co.*, 449 U.S. at 389.

Similarly, the work-product doctrine fulfills an essential and important role in ensuring the Sixth Amendment right to effective assistance of counsel. The Supreme Court has recognized that the work-product doctrine is vital to "assur[e] the proper functioning of the criminal justice system," in that it "provid[es] a privileged area within which [a

21

lawyer] can analyze and prepare his client's case." *See Nobles*, 422 U.S. at 238; *see also In re Grand Jury Subpoenas*, 454 F.3d at 520 (explaining that "people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties"). Without that "privileged area," a lawyer's ability to plan and present his client's defense will be impaired. *See Nobles*, 422 U.S. at 238; *see also Hickman*, 329 U.S. at 511.[15]

b.

In ruling that the Law Firm had not established a likelihood of irreparable harm, the district court erred as a matter of law by affording insignificant weight to the foregoing principles protecting attorney-client relationships. *See Upjohn Co.*, 449 U.S. at 389 (emphasizing importance of attorney-client privilege); *Nobles*, 422 U.S. at 237-38 (recognizing significance of protecting lawyer work product); *cf. Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 434 (4th Cir. 2003) (explaining that court abuses discretion in

---

[15] Although the attorney-client privilege and work-product doctrine are essential components of our adversarial system, neither is absolute. For example, claims of attorney-client privilege or work-product protection can sometimes be defeated by the crime-fraud exception. *See In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). Put succinctly, "[b]oth the attorney-client and work-product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *Id.* In these proceedings, the government has invoked that exception as to Client A of Lawyer A.

ignoring applicable legal principles). Crucially, the court failed to recognize that an adverse party's review of privileged materials seriously injures the privilege holder. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (concluding that a party had demonstrated the likelihood of irreparable harm predicated on "the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (explaining that "forced disclosure of privileged material may bring about irreparable harm"); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984) (ruling that law firm had demonstrated likelihood of irreparable harm where government seized thousands of files containing privileged information).

3.

When the pertinent legal principles are properly applied to the unrefuted evidence, the Filter Team's review of the materials seized from the Law Firm was and is injurious to the Firm and its clients. And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone. We are therefore satisfied that the Law Firm will be irreparably harmed absent an award of injunctive relief against the Filter Team and its Protocol.[16]

---

[16] We observe that the Filter Team and its Protocol may inflict other injuries on the Law Firm. For example, adverse publicity about the search of the Law Firm, the Filter Team, and its Protocol could make potential clients less likely to seek out and retain the Firm. Additionally, potential and current clients might be reluctant to candidly communicate with the Law Firm attorneys because they fear government review of their (Continued)

23

B.

Turning to the injunction factors not reached and addressed by the district court, we begin with the likelihood of success factor. In order to prevail on that factor, the Law Firm must make a "clear showing" that the Filter Team and its Protocol are legally flawed. *See Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). Stated differently, the Law Firm is obliged to demonstrate it is likely to succeed on its request that the magistrate judge — rather than the Filter Team — perform the privilege review of the seized materials.

In that regard, the Law Firm maintains that the Filter Team and its Protocol are simply "incompatible with courts' historical protection of the attorney-client privilege and the work-product doctrine." *See* Br. of Appellant 35. The Law Firm contends that there is a clear appearance of — and potential for — improprieties when government agents are authorized to rummage through attorney-client communications, particularly when less than one percent of those communications relate to the investigations at issue. And the Law Firm posits that use of the Filter Team in these circumstances will chill the free flow of information between clients and lawyers. Put simply, the Law Firm maintains that judicial functions are involved in all aspects of assessing and deciding privilege issues. The Law Firm thus argues that a magistrate judge or a special master must perform those functions.

---

communications and breaches of confidentiality. Consequently, the Law Firm is likely to be deprived of information necessary to the proper handling of its cases. *See Upjohn Co.*, 449 U.S. at 389 (explaining necessity of "full and frank communication" between client and his lawyer).

As further explained below, we are satisfied that the Law Firm has shown that it is likely to succeed on the merits of its challenge to the Filter Team and its Protocol. In approving the Filter Team and its Protocol, the magistrate judge made several legal errors by, inter alia: (1) assigning judicial functions to the Filter Team; (2) authorizing the Filter Team and its Protocol in *ex parte* proceedings that were conducted prior to the search and seizures at the Law Firm; and (3) failing to properly weigh the foundational principles that protect attorney-client relationships.

1.

To start, the magistrate judge — by authorizing the Filter Team and its Protocol — erred in assigning judicial functions to the executive branch. We have recognized that, when a dispute arises as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution of that dispute is a judicial function. *See NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 498, 500 (4th Cir. 2011) (concluding that, in deciding whether to enforce an administrative subpoena seeking potentially privileged documents, a court "cannot delegate" an *in camera* review of documents to an agency, but must itself decide a claim of privilege); *see also In re The City of New York*, 607 F.3d 923, 947 (2d Cir. 2010) (observing that evaluating privilege claim is always a judicial function); *In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 256 (4th Cir. 2005) (remanding to district court for *in camera* review concerning privileged communications and applicability of crime-fraud exception). Indeed, the Constitution vests "[t]he judicial Power" solely in the federal courts, *see* U.S. Const. art. III, § 1, which includes "the duty of interpreting and applying" the law, *see*

25

*Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Put simply, a court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute. *See Interbake Foods*, 637 F.3d at 501 (affirming refusal "to delegate" to an administrative law judge the judiciary's "responsibility to decide the issue of privilege"); *NLRB v. Detroit Newspapers*, 185 F.3d 602, 606 (6th Cir. 1999) (concluding that "district court had the obligation . . . to determine whether the subpoenaed documents were protected by some privilege, and had no discretion to delegate that duty").

In these proceedings, the Privilege Assessment Provision of the Filter Protocol contravened that nondelegation principle. Put succinctly, the Privilege Assessment Provision erroneously authorized the executive branch — that is, the Filter Team — to make decisions on attorney-client privilege and the work-product doctrine. As our good colleague Judge Niemeyer recognized in *Interbake Foods*, a court simply cannot delegate its responsibility to decide privilege issues to another government branch. *See* 637 F.3d at 498, 500-01 (recognizing that court must decide privilege disputes); *see also In re The City of New York*, 607 F.3d at 947 (observing that evaluating privilege claim is a judicial function).

To compound that error, the Privilege Assessment Provision delegated judicial functions to *non-lawyer* members of the Filter Team. In other words, the Privilege Assessment Provision authorized paralegals and IRS and DEA agents to designate seized documents as nonprivileged, and allowed the Filter Team AUSAs to deliver such documents to the Prosecution Team without the approval of the Law Firm or a court order.

26

The Third Circuit has strongly criticized a similar protocol and explicitly ruled that non-lawyer federal agents could not make privilege determinations. *See In re Search of Elec. Commc'ns*, 802 F.3d 516, 530 & n.54 (3d Cir. 2015).

In addition to the separation of powers issues that arise from the Filter Protocol's delegation of judicial functions to the Filter Team, there are other apparent legal problems therewith. There is the possibility that a filter team — even if composed entirely of trained lawyers — will make errors in privilege determinations and in transmitting seized materials to an investigation or prosecution team. On this point, the Sixth Circuit recognized several years ago that such filter teams present "reasonably foreseeable risks to privilege" and "have been implicated . . . in leaks of confidential information to prosecutors." *See In re Grand Jury Subpoenas*, 454 F.3d at 523. As Judge Boggs aptly explained, a filter team might "have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and . . . some [filter] team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that [filter] teams pose a serious risk to holders of privilege." *Id.*

As the Sixth Circuit also emphasized, filter team errors can arise from differences of opinion regarding privilege. *See In re Grand Jury Subpoenas*, 454 F.3d at 523. In explaining that problem, the court elaborated that a filter team's members "might have a more restrictive view of privilege" than the subject of the search, given their prosecutorial interests in pursuing the underlying investigations. *Id.* That "more restrictive view of privilege" could cause privileged documents to be misclassified and erroneously provided to an investigation or prosecution team. *Id.*

27

The Sixth Circuit also acknowledged that filter team errors can result from mistakes or neglect, and described one infamous occurrence as follows:

> In *United States v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991), . . . the government's [filter] team missed a document obviously protected by attorney-client privilege, by turning over tapes of attorney-client conversations to members of the investigating team. This *Noriega* incident points to an obvious flaw in the [filter] team procedure: *the government's fox is left in charge of the* [*law firm's*] *henhouse*, and may err by neglect or malice, as well as by honest differences of opinion.

*See In re Grand Jury Subpoenas*, 454 F.3d at 523 (emphasis added).

Strikingly, the risks to attorney-client privilege and the work-product doctrine that were identified by the Sixth Circuit have been recently realized in the District of Maryland, from which this appeal arises. *See United States v. Elbaz*, No. 8:18-cr-00157, slip op. at 4-6 (D. Md. June 20, 2019), ECF No. 216 (the "*Elbaz* opinion"). According to the *Elbaz* opinion, the government's filter team improperly disclosed thousands of potentially privileged documents to a prosecution team, which then examined some of the documents. *Id.* Those blunders occurred nearly a year before this Filter Team was authorized by the magistrate judge. *Id.* at 3-6. And the *Elbaz* opinion detailing that filter team's mistakes was filed in the District of Maryland on June 20, 2019, just a week after the magistrate judge's authorization of this Filter Team on June 13, 2019, and three weeks before the district court's Denial Order of July 11, 2019.

In sum, the Filter Protocol improperly delegated judicial functions to the Filter Team. And the magistrate judge failed to recognize and consider the significant problems with that delegation, which left the government's fox in charge of guarding the Law Firm's henhouse. *See In re Grand Jury Subpoenas*, 454 F.3d at 523.

28

## 2.

Relatedly, the magistrate judge erred by prematurely authorizing the Filter Team and its Protocol in *ex parte* proceedings that it conducted on June 13, 2019, five days before the search warrant was executed and voluminous seizures were made from the Law Firm.[17] First, the timing of the judge's authorization undermined the judge's ability to exercise discretion with respect to the Filter Team and its Protocol, in that the judge could not have been fully informed of what was seized from the Law Firm. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (emphasizing that court's exercise of discretion must be "informed"). And the judge may well have rejected the Filter Team and its Protocol if the judge had known (1) that 99.8 percent of the 52,000 seized emails were not from Client A, were not sent to Client A, and did not mention Client A's surname; and (2) that many of those seized emails contained privileged information concerning other clients of the Law Firm. Put simply, the judge should have deferred the decision concerning the proposed Filter Team and its Protocol pending the execution and return of the search warrant.

---

[17] Although the Law Firm generally contests the *ex parte* actions of the government below and on appeal, the Firm does not specifically argue that the magistrate judge erred by approving the Filter Team and its Protocol in *ex parte* proceedings before the search was conducted. *See* Br. of Appellant 57; Reply Br. of Appellant 3, 22. We are nevertheless satisfied that the process by which the authorization was made falls within the Law Firm's broad challenge to the Filter Team and its Protocol. Moreover, we are entitled to assess legal issues that have not been squarely raised when it facilitates the correct resolution of an appeal. *See Meyers v. Lamer*, 743 F.3d 908, 912 (4th Cir. 2014) (emphasizing that "it is the fundamental province of this Court to decide cases correctly, even if that means considering arguments . . . not raised by the parties at all").

Second, the magistrate judge should have declined the government's *ex parte* invitation with respect to the Filter Team, and the judge should have conducted adversarial proceedings on whether to authorize the Filter Team and the Filter Protocol. *See RSZ Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007) (emphasizing that *ex parte* proceedings are "greatly disfavored"); *In re Ingram*, 915 F. Supp. 2d 761, 763-64 (E.D. La. 2012) (assessing briefing from parties on propriety of filter team). In such contested proceedings, the judge could have been fully informed of the relevant background on the Law Firm and its clients, as well as the nature of the seized materials. Additionally, the clients of the Law Firm and their lawyers could have been heard by the judge.

In a recent example involving a proposed filter team, federal agents searched the office of Michael Cohen, a New York City lawyer, and seized privileged materials. *See Cohen v. United States*, No. 1:18-mj-03161 (S.D.N.Y. Apr. 13, 2018), ECF No. 6 at 4, 25. Four days after the search — and before the filter team created by the search warrant had reviewed any of the seized materials — the district court conducted adversarial proceedings concerning the prosecutor's proposed use of a filter team. *See generally Cohen*, ECF No. 36 (May 1, 2018). Prior to those proceedings, the court was informed of the materials that had been seized from Cohen's office. *See Cohen*, ECF No. 6 at 18-19. During the proceedings, the court heard from Cohen's lawyer and the lawyer for Cohen's primary client, who each argued against court approval of the filter team request. *See Cohen*, ECF No. 36 at 12-16, 30-31.

The sensible procedures adhered to by the *Cohen* court demonstrate that, if the magistrate judge had conducted adversarial proceedings after the search but before approving the Filter Team and its Protocol in this case, the judge would have been fully informed of the materials that were seized from the Law Firm. The judge would then have heard from the Law Firm's counsel, and possibly also from the clients of the Firm through their lawyers, *before* the Filter Team reviewed any seized materials. The upshot is that — in failing to conduct adversarial proceedings prior to authorizing the Filter Team and its Protocol — the magistrate judge prematurely granted the *ex parte* request of the United States Attorney.[18]

3.

a.

We are also troubled that, in summarily approving the Filter Team and its Protocol, the magistrate judge — like the district court in thereafter assessing the Injunction Requests — gave no indication that she had weighed any of the important legal principles that protect attorney-client relationships. Put simply, the Filter Protocol authorized government agents and prosecutors to rummage through Lawyer A's email files. Again, many of the emails

---

[18] The process adhered to by the *Cohen* court is pertinent to these proceedings in several material respects. For example, the *Cohen* filter team did not review any of the seized materials prior to an adversarial hearing and a ruling on the filter team's propriety. Importantly, the court heard from Cohen's lawyer and counsel for Cohen's primary client in those proceedings. The court ultimately rejected the government's filter team proposal and appointed a special master. *See Cohen*, ECF No. 30 (Apr. 27, 2018). Notably, the *Cohen* proceedings were conducted more than a year before the magistrate judge's authorization of this Filter Team.

concerned other clients and other matters. The court's authorization of such an extensive review of client communications and lawyer discussions by government agents and prosecutors was made in disregard of the attorney-client privilege, the work-product doctrine, and the Sixth Amendment. *See Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d at 961 (criticizing seizures of client files from law firm because government made no effort to limit seizures of firm's materials, and thereby "trampl[ed]" on attorney-client privilege and work-product protections as to all clients); *United States v. Stewart*, No. 1:02-cr-00396, 2002 WL 1300059, at \*5, \*10 (S.D.N.Y. June 11, 2002) (explaining that search of lawyer's office raised Sixth Amendment concerns and appointing special master where documents seized from law firm were likely to contain privileged information relating to criminal defendants). The magistrate judge erred in failing to explicitly weigh those foundational principles that protect attorney-client relationships.

b.

At this juncture, we emphasize another "serious defect" of the Filter Protocol challenged by the Law Firm as subverting attorney-client relationships. *See* Reply Br. of Appellant 14 n.4. Specifically, the Filter Protocol prospectively authorized the Filter Team to contact the Law Firm's clients *ex parte* and seek waivers of their attorney-client privileges. The Model Rules of Professional Conduct, however, generally bar a lawyer from communicating with a represented party about the subject of the representation without the represented party's lawyer being present. *See* Model Rules of Prof'l Conduct r. 4.2 (Am. Bar Ass'n 1983); 2 Hazard, Jr. et al., *supra*, § 41.02 (explaining that Rule 4.2 "prevents a lawyer from taking advantage of a lay person"); *id.* § 41.12 (discussing

32

application of Rule 4.2 to prosecutors). Although an exception to that rule can — in the proper circumstances — be made by a court, any such court order should be predicated on an individualized assessment of the attorney-client relationship. *See* Model Rules of Prof'l Conduct r. 4.2; *see also United States v. Lopez*, 4 F.3d 1455, 1462 (9th Cir. 1993) (explaining that court must make "informed decision" regarding whether to authorize lawyer's communication with represented party). That was not even attempted here, in that the Filter Protocol was approved *ex parte* before the search warrant was executed.

By asking the Law Firm to furnish the Filter Team with a client list — which could be used by Filter Team members to directly contact clients and seek privilege waivers under the Filter Protocol — the government demonstrated a lack of respect for the attorney-client privilege and the Firm's duty of confidentiality to its clients. In declining to reveal a client list to the Filter Team, the Law Firm relied on its ethical obligations to protect confidential and privileged information relating to its clients. *See* Br. of Appellant 37 (asserting that the government's request for a client list ignored the proposition that the Law Firm is "ethically prohibited from disclosing . . . the identity of clients when the relationship remains confidential"); *see also* Model Rules of Prof'l Conduct r. 1.6(a) (describing duty of confidentiality). Such information will sometimes include the existence of the lawyer-client relationship itself. *See In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (recognizing that the attorney-client privilege can "extend to the client's identity"); 1 Hazard, Jr. et al., *supra*, § 10.12 (collecting cases where client identity considered confidential or privileged). The breach of the duty of confidentiality "is enforceable by civil remedies as well as through the [attorney] disciplinary process." *See*

33

1 Hazard, Jr. et al., *supra*, § 10.16, 10-108.1. And a breach of the attorney-client privilege by an attorney is likewise sanctionable. *See id.* Indeed, at least one jurisdiction imposes criminal penalties for improperly breaching attorney-client privilege. *See* Tenn. Code Ann. § 23-3-107. In short, authorizing the government in *ex parte* proceedings to directly contact any and all clients of the Law Firm is another example of how the Filter Protocol approved by the magistrate judge undermined attorney-client principles.

### 4.

At bottom, the magistrate judge erred in assigning judicial functions to the Filter Team, approving the Filter Team and its Protocol in *ex parte* proceedings without first ascertaining what had been seized in the Law Firm search, and disregarding the foundational principles that serve to protect attorney-client relationships. In these circumstances, we are satisfied that the magistrate judge (or an appointed special master) — rather than the Filter Team — must perform the privilege review of the seized materials. *See Klitzman, Klitzman & Gallagher*, 744 F.2d at 962 (recommending appointment of special master in similar circumstances); *United States v. Gallego*, No. 4:18-cr-01537, slip op. at 5-6 (D. Ariz. Sept. 6, 2018), ECF No. 65 (appointing a special master "to review the items seized from [the] [d]efendant's law office for privilege and responsiveness to the search warrant"); *Cohen*, ECF No. 30 (Apr. 27, 2018) (appointing special master to review documents seized from lawyer); *Stewart*, 2002 WL 1300059, at *10 (appointing special master to perform privilege review of documents seized from office of criminal defense

34

lawyer).[19]  We are therefore satisfied that the Law Firm has demonstrated that it is likely to succeed on the merits.

C.

In order to prevail on the next injunction factor, the Law Firm is obliged to show that the equities weigh in its favor.  *See Winter*, 555 U.S. at 20.  And we are satisfied that the Law Firm has done so.  Specifically, the harm to the Law Firm and its clients that will be caused by continuing the Filter Team's review outweighs any harm to the government that might result from the magistrate judge conducting the privilege review of the seized materials.  Indeed, we discern no harm to the government in barring the Filter Team from rummaging through Law Firm materials that are unrelated to the underlying investigations.

In seeking to convince us otherwise, the government maintains that the magistrate judge's review of the seized materials will unduly delay the government's investigations.  And the government claims that it has an interest in efficiently investigating criminal wrongdoing.  Although efficient criminal investigations are certainly desirable, we are not persuaded that the claimed delay in its investigations weighs in the government's favor.  Put simply, the government chose to proceed by securing a search warrant for the Law Firm and seeking and obtaining the magistrate judge's approval of the Filter Protocol.  The

---

[19] The government contends on appeal that the Filter Team's privilege review of the seized materials is no different than such a review by a magistrate judge or a court-appointed special master.  Unlike the Filter Team, however, a magistrate judge and a special master are judicial officers and *neutral* arbiters that have no stake in the outcome of the privilege decisions.  *See In re Grand Jury Subpoenas*, 454 F.3d at 523 (explaining inherent conflict in authorizing filter team to decide privilege claims).

35

government should have been fully aware that use of a filter team in these circumstances was ripe for substantial legal challenges, and should have anticipated that those challenges could delay its investigations.[20] And, in any event, delay in the government's investigations here does not outweigh the harm to the Law Firm and its clients caused by the Filter Team's review. *See In re Grand Jury Subpoenas*, 454 F.3d at 523-24.

The government also argues that the equities weigh against the Law Firm because the Firm waited ten days after the search to file its Injunction Requests. We are unconvinced, however, that the Law Firm somehow slumbered on its rights. Indeed, the Law Firm contested the search and seizures when they were ongoing and — three days thereafter — dispatched a detailed letter to the United States Attorney objecting to what had occurred and what was apparently going on with the Filter Team. The prosecutors ignored that letter, prompting the Law Firm to file its Injunction Requests. We do not fault the Law Firm for seeking a negotiated resolution of these important disputes before requesting court intervention. And we will not reward the government for ignoring those efforts. *See Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947) ("[H]e who seeks equity must do equity."). In these circumstances, the Law Firm has convincingly shown that the equities weigh in its favor.

D.

---

[20] Notwithstanding the government's responsibility for some of the delay about which it complains, we are nevertheless sensitive to its concerns. Indeed, we have expedited this appeal, and we issued our Interim Order within two days of the oral argument.

36

Finally, the Law Firm is obliged to establish, in order to secure the relief it seeks, that "an injunction is in the public interest." *See Winter*, 555 U.S. at 20. We are satisfied that an award of injunctive relief in these circumstances supports the "strong public interest" in the integrity of the judicial system. *See United States v. Hasting*, 461 U.S. 499, 527 (1983) (Brennan, J., concurring in part and dissenting in part). By creating appearances of unfairness to the Law Firm clients who are unrelated to the government's investigation of Client A, the Filter Team and its Protocol contravene the public interest. *See Gallego*, slip op. at 4-6 (recognizing appearances of unfairness inherent in use of filter teams and appointing special master to review materials seized from law firm); *Stewart*, 2002 WL 1300059, at *8 (explaining that "it is important that the procedure adopted [for the review of seized materials] . . . not only be fair but also appear to be fair"); *United States v. Neill*, 952 F. Supp. 834, 841 n.14 (D.D.C. 1997) (emphasizing that use of filter team creates "appearance of unfairness"). For those clients — and to the public at large — it surely appears, as the Sixth Circuit recognized, that "the government's fox [has been] left in charge of the [Law Firm's] henhouse." *See In re Grand Jury Subpoenas*, 454 F.3d at 523; *see also In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) ("It is a great leap of faith to expect that members of the general public would believe any . . . wall [between a filter team and a prosecution team] would be impenetrable; this notwithstanding our own trust in the honor of an AUSA.").

Appearances of unfairness are especially apparent in these proceedings, in that the Filter Team includes prosecutors employed in the same judicial district where Law Firm clients "are being investigated by, or are being prosecuted by," the United States Attorney

37

for Maryland. *See* S.J.A. 66. It would be difficult for reasonable members of the public to believe that Filter Team AUSAs would disregard information in Lawyer A's emails that might be relevant to other criminal inquiries in Maryland. In fact, the government has never disclaimed an intention to use the plain-view doctrine in connection with the Filter Team's access to the materials seized from the Law Firm. *See United States v. Rumley*, 588 F.3d 202, 205 (4th Cir. 2009) (explaining that, under the plain-view doctrine, a law enforcement officer can make a seizure of an object in plain view if, inter alia, "the object's incriminating character is immediately apparent" (internal quotation marks omitted)); *cf. United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1178 (9th Cir. 2010) (Kozinski, C.J., concurring) (suggesting that, "[w]hen the government wishes to obtain a warrant to examine a[n] . . . electronic storage medium to search for certain incriminating files, . . . magistrate judges should insist that the government forswear reliance on the plain-view doctrine" (citation omitted)).[21]

Due to the appearances of unfairness caused by the Filter Team, and in view of the other problems associated with the Filter Team, it is surprising that the government has so vigorously supported it. We simply observe that prosecutors have a responsibility to not only see that justice is done, but to also ensure that justice *appears* to be done. *See In re*

---

[21] Even if the Filter Team AUSAs have been instructed to ignore information relating to possible criminal activity by other Law Firm clients in the seized materials, our plain view concerns would not be assuaged. The review of such information by the Filter Team AUSAs cannot be undone. Additionally, the IRS and DEA agents on the Filter Team have their own superiors. It may well be difficult for those agents to withhold from their superiors information about possible crimes potentially identified in the seized materials.

*Search Warrant for Law Offices*, 153 F.R.D. at 59 ("The appearance of [j]ustice must be served, as well as the interests of [j]ustice."). Federal agents and prosecutors rummaging through law firm materials that are protected by attorney-client privilege and the work-product doctrine is at odds with the appearance of justice.

* * *

As reflected herein, we are satisfied that the magistrate judge's authorization of the Filter Team and the Filter Protocol was improper and that injunctive relief is warranted. The district court thus abused its discretion by failing to enjoin the Filter Team's review of the seized materials.[22]

IV.

Pursuant to the foregoing and our Interim Order, we reverse the district court's Denial Order and remand for such other and further proceedings as may be appropriate.

*REVERSED AND REMANDED*

---

[22] Although the Law Firm has raised Fourth Amendment contentions, we leave those issues to the district court. *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (emphasizing that this Court is "a court of review, not of first view" (internal quotation marks omitted)).

RUSHING, Circuit Judge, concurring:

As the majority correctly concludes, the unique facts and circumstances of this case preclude this Filter Team operating under this Filter Protocol from reviewing the fruits of this search warrant. I write separately to expand upon two points in our analysis of the Law Firm's likelihood of success on the merits.

First, as the majority notes, after the July 10, 2019 hearing on the Law Firm's and Client A's pending motions, the district court modified the Privilege Assessment Provision of the Filter Protocol. Maj. Op. 12. Under the Modified Privilege Assessment Provision, no documents—including those the Filter Team considers nonprivileged—can be sent to the Prosecution Team without either the consent of the Law Firm or a court order. The majority does not suggest that the Modified Privilege Assessment Provision, which replaced the original Privilege Assessment Provision, impermissibly usurps a judicial function. *See* Maj. Op. 25–29.

Second, the Filter Team immediately began reviewing the documents seized from the Law Firm, despite the Law Firm's protests about the attorney-client privilege and work-product doctrine. In other cases, the government has voluntarily delayed review for a brief time until the court could schedule a hearing on the target's motion for a restraining order or injunction. *See*, *e.g.*, *Cohen v. United States*, No. 1:18-mj-03161 (S.D.N.Y. Apr. 13, 2018), ECF Nos. 6, 36. That sensible procedure preserves the status quo until a court can rule. The majority suggests a procedure by which a magistrate judge could authorize a search but delay ruling on proposed review protocols until the court can *sua sponte* gather the parties for an adversary proceeding. Maj. Op. 29–31. That innovative procedure may

40

be salutary in some circumstances, but the burden remains on the parties to voice their objections, and accommodate the orderly resolution of those objections, in the normal course.